IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC,<br>    Appellant<br><br>v.<br><br>VISTEON CORPORATION, et al. and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF VISTEON CORPORATION, et al.,<br>    Appellees | CIVIL ACTION<br><br><br><br><br>NO. 10-91 |
| In Re: VISTEON CORPORATION, et al.,<br><br>    Debtors | On Appeal from U.S. Bankruptcy Court<br>Chapter 11<br>Case No. 09-11786 (CSS)<br>(Jointly Administered) |

## MEMORANDUM RE: FINAL ORDER OF MARCH 31, 2010

**Baylson, J. (Specially Presiding)**                                                   **April 7, 2010**

    Pursuant to an appeal from an Order of the Bankruptcy Court authorizing debtors to amend or terminate certain post-employment benefits, and a Motion to Stay the Bankruptcy Court's Order, this Court held a hearing on March 30, 2010, and the following day issued a final Order AFFIRMING the Order of the Bankruptcy Court and GRANTING the Motion for Stay, limited to thirty days pending an appeal to the Third Circuit Court of Appeals. Although the record of the hearing contains a summary of the reasons, this Memorandum will provide further details.[1]

---

[1] The Bankruptcy Court approved the Debtor's Plan to take effect as of April 1, 2010, and the parties adopted a briefing schedule which allowed only a few days for this Court to consider the Appellant's Motion for Stay on all the briefs the parties had agreed to file on this issue. This Memorandum has been expedited and does not contain as detailed a legal discussion as might normally be the case.

## I. Statement of the Case

This case arises out of the bankruptcy of Visteon Corporation, which, under the Bankruptcy Court's jurisdiction, filed a Motion for Order authorizing it to amend or terminate post-employment healthcare and life insurance benefits for certain employees and retirees and their surviving spouses, spouses, domestic partners, and dependents (Bankruptcy Dkt. No. 424). Pursuant to this Motion (the "OPEB Motion"), the debtors sought authority to terminate these benefits under several different benefit plans. The Bankruptcy Court held a number of hearings, and on December 10, 2009, issued an oral ruling denying the OPEB Motion in connection with certain current and former employees at the North Penn plant operating under the then-existing Collective Bargaining Agreement dated November 2, 2005, but granting the OPEB Motion for the remaining retirees, who are represented by Appellant in this case.

Essential to the Bankruptcy Court's Order granting the OPEB Motion terminating benefits for the remaining retirees was a factual finding that their rights as employees had never vested, which was an inherently factual finding based on the Bankruptcy Court's review of a number of documents and consideration of testimony at evidentiary hearings.

Bankruptcy Judge Sontchi subsequently denied Appellant's Motion for Stay, finding that Appellant had no likelihood of success on the merits, and that substantial harm and uncertainty would be imposed on the debtors and other stakeholders if a stay were granted.

At the hearing before this Court on March 30, 2010, there were substantive arguments on behalf of Appellant, Appellee Visteon, and also the Unsecured Creditors Committee.

## II. Summary of Contentions

Appellant contends the Bankruptcy Court erred in the following respects:

    A.    The Bankruptcy Court erred in deciding that benefits could be terminated without reference to 11 U.S.C. § 1114.

    B.    Even if § 1114 did not apply, there is a factual question as to whether the debtor can terminate the benefits and the Bankruptcy Court clearly erred in its determination that the benefits were not vested.

    C.    The legal authority on which the Bankruptcy Court rested is inconsistent with the plain meaning of § 1114 and the intent of Congress.

Appellees dispute each of these contentions.

### III. Discussion

    A.    The factual findings of the Bankruptcy Court are not clearly erroneous. The core factual finding of the Bankruptcy Court is that the benefits had not vested. After considering the arguments and reviewing the record, the undersigned concluded that the Bankruptcy Court's determination that the Appellant's assertion of its retirees' rights had never vested was a factual finding, supported by the record, that could not be characterized as clearly erroneous. Specifically, the Plant Closure Agreement contained the following language:

> I understand that Visteon may in the future amend its benefit plans and make available different retirement, placement or separation benefits for which I may not be eligible. The Plant Closure Agreement does not limit or in any way modify the provisions of any benefit plan.

See Visteon Connorsville Plant Closure Program Waiver and Release Form, Bates No. IUE-CWA 46. Appellant argues that because the document does not use the specific word "terminate," the document is at least ambiguous and cannot be interpreted as a matter of law, as the Bankruptcy Court held.

Appellant further contends that the Plant Closure Agreement is part of a collective bargaining agreement, citing Beidleman v. Stroh Brewery Co., 182 F.3d 225 (3d Cir. 1999). Appellant also contends that various other documents introduced into evidence in the Bankruptcy Court, some of which are cited below, reflect an understanding that wages were given up by the union workers so that they would receive retirement health benefits as well as other health benefits for employees permanently. Appellant argues, assuming the Plant Closure Agreement is a collective bargaining agreement, that the benefit plan documents relied on by the debtors do not alone determine the retirees' rights.

In support of its position, Appellant relied on a letter from the Director of Industrial Relations for Predecessor Company dated February 29, 1981 which stated:

> It was and is expressly understood that the company, by providing for such types of insurance coverages, is in no way waiving any and all rights it currently has or may have in the future to continue or discontinue such coverages or to refuse to bargain with the union on behalf of former employees who have retired or employees who will have retired under the company's pension plan with respect to any and all subjects.

IUE-CW 12.

Appellant contends that this document also constitutes a collective bargaining agreement and was followed by a course of conduct over the ensuing thirty-odd years which was tantamount to the vesting of benefits, and that this interpretation can be supported by the Beidleman decision. See Tr. 3/30/10, pp. 23-27. As the Plant Closure Agreement constitutes a collective bargaining agreement, along with the earlier agreements, Appellant contends that the absence of the word "terminate" must be construed against the debtor.

This Court has difficulty following the logic of the Appellant. Nothing in Beidleman

would warrant this interpretation, even assuming the Plant Closure Agreement is part of the collective bargaining agreements, in view of the clear language in the Plant Closure Agreement and other agreements that are in the record and were relied on by the Bankruptcy Court.

Further support for the Bankruptcy Court's factual decision comes from the Benefit Plan description dated January 1, 2006, which states:

> Visteon Systems LLC intends to continue the plan as described in this handbook. However, the company reserves the right to suspend, amend or terminate the plan – or any other coverages or features provided under the plan – at any time and in any matter to the extent permitted by law (subject to the collective bargaining requirements). As a result this handbook is not a contract, nor is it a guarantee of your coverages.

(Bates No. V-33).

The Bankruptcy Court concluded, and the undersigned agreed, that even assuming that these plan documents were part of a bargaining agreement, they cannot result in vesting of benefits, because of the clear language to the contrary.

## IV. Appellant's Reliance on § 1114 Is Not Legally Sustainable

The other major argument by Appellant was that § 1114 of the Bankruptcy Code required the Bankruptcy Court to institute a procedure in which the debtor must negotiate in good faith before it could terminate benefits. This statute, in relevant part, states: "Notwithstanding any other provision of this title, the debtor in possession . . . shall timely pay and shall not modify any retiree's benefits. . . ."[2] Appellant asserts that the plain meaning of this statute warrants at least remand, if not reversal, of the Bankruptcy Court's order because it precludes the debtor from doing what the Bankruptcy Court approved.

---

[2]There are some exceptions which counsel agreed did not apply.

The bankruptcy judge concluded that this section applied only to vested retiree benefits, or such benefits that can be modified only by operation of the Bankruptcy Code, in reliance on a decision by Bankruptcy Judge Drain in In re Delphi Corp., 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009).[3] Central to the Bankruptcy Court's holding was that Appellant's interpretation, in giving Appellant the rights it claimed under § 1114, which may seem legitimate based on a plain reading of the statute, would result in retirees receiving more protection from a company under bankruptcy than they would receive from a company outside of bankruptcy. This would be a unique if not revolutionary interpretation of the Bankruptcy Code by improving on the pre-petition, contractual rights of a third party constituent as a result of the filing of a bankruptcy case.

## V. Standards for Stay Pending Appeal

This Court considered the standard prerequisites for a stay pending appeal, specifically the likelihood of success on the merits, irreparable harm, relative injury to the parties, and the public interest, see Republic of Phillippines v. Westinghouse Electric Corp., 949 F.2d 653 (3d Cir. 1991), and concluded that the stay should be denied because, in view of the factual finding, and the holding of Judge Drain in Delphi, which had been followed by Judge Sontchi, Appellant had little likelihood of success on the merits.[4]

---

[3] The Appellant contends that the facts in Delphi are distinguishable but the Bankruptcy Court and this Court have found that the legal impact of § 1114 as relied on and applied in Delphi does not depend on the precise factual situation. It should be noted that the Delphi opinion followed a similar holding by a Bankruptcy Judge in the District of Kansas, In re Doskocil Cos., 130 B.R. 870 (Bankr. D. Kan. 1991). There is one contrary case supporting Appellant, In re Farmland Industries, 294 B.R. 903 (Bankr. W.D. Mo. 2003).

[4] However, the Court notes that neither the Supreme Court nor any circuit court has ruled on this issue, and thus, the undersigned's evaluation of the legal issue is supported only by the

There was a showing that many retirees who were represented by Appellant in this appeal would have irreparable harm as a result of the cancellation of their retirement benefits, although certain other aspects of the harm were purely monetary. There was also evidence of equities on both sides from the granting or denial of the stay, and that the public interest did not necessarily favor one side over the other.

After this Court indicated that it would deny the stay, the issue was raised as to whether, in view of the comprehensive briefs that had been filed and the detailed oral argument that had just taken place, there would be any advantage to further briefing on the merits of the appeal in this Court, or whether the Appellant's position would be best served by this Court immediately affirming the Order of the Bankruptcy Court and allowing the parties to appeal to the Third Circuit.

This Court indicated that there were good reasons why a stay should be granted for an additional thirty days in order to allow the Appellant to file its brief and seek a further stay from the Third Circuit Court of Appeals. The undersigned encouraged the parties to work out interim

---

factual findings by the Bankruptcy Court in this case, and the interpretation of § 1114 by several respected Bankruptcy Judges. The Second Circuit implied, in dictim, that this interpretation was correct. See In re Ames Department Stores, 76 F.3d 66, 69, 71 (2d Cir. 1996). 5 Collier on Bankruptcy § 1114.02[1][a] at 1114 (15th Ed. 1995) also supports this interpretation. However, a strict application of the "plain meaning" doctrine may warrant a fresh reading of this statute, but such an interpretation would still have to get over the hurdle that interpreting the statute in a manner suggested by Appellant results in the retirees getting more protection through a bankruptcy proceeding than they would absent bankruptcy.

coverage of the retirees for this thirty-day period; the parties came to such a conclusion, which is reflected in the Stipulated Order dated March 31, 2010 (Doc. No. 22).

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J. (Specially Presiding)

O:\DE Cases\10-91 In re Visteon Corp\Visteon 10-91 - Memo Mot Stay & Appeal.wpd